IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:05-CR-17 |
| | ) | |
| LUTHER ALAN WARE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Luther Alan Ware, has filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), contending that he is at a heightened risk of serious illness from COVID-19 because of his chronic health conditions. The § 3553(a) factors do not support release, and his motion will be denied.

**Procedural History**

In May 2005, a jury found Mr. Ware guilty of interference with commerce by robbery, carrying and using a firearm during a crime of violence, and possession of firearm by a felon. Minute Entry 05/11/2005; Doc. 24. In September 2005, Mr. Ware was sentenced to 406 months of imprisonment followed by three years of supervised release. Minute Entry 09/13/2005; Doc. 31. His convictions and sentences were affirmed on appeal. Doc. 45.

Mr. Ware filed a motion for compassionate release on December 30, 2020, asking the Court to reduce his sentence to time served. Doc. 83 at 1. The Court ordered the government to respond, Minute Entry 01/05/2021; Doc. 77, and briefing is now complete.

## Background

Mr. Ware has spent most of his adult life imprisoned for robberies. His criminal history began in 1987 when he was 22 years old and convicted of five counts of felony robbery with a dangerous weapon. Doc. 73 at ¶¶ 25–29.[1] He received a sentence of 14 years imprisonment, but he was released in March 1993. *Id.* at ¶ 25. In August 1995, he was once again convicted of felony robbery with a dangerous weapon and sentenced to 20 years of imprisonment. *Id.* at ¶ 30. Mr. Ware was discharged and released in March 2004, and he committed the instant offense less than one year later. *Id.* at ¶¶ 4, 33.

Specifically, Mr. Ware entered an insurance business, pulled out a handgun, and took cash and checks from the register and an employee's wallet. *Id.* at ¶¶ 4–5. Mr. Ware pointed the gun at the employee and pulled the trigger, but the gun misfired. *Id.* at ¶ 6. The employee then struggled with Mr. Ware, who fired the gun twice during the fight; after missing the employee both times, Mr. Ware struck the employee's head with the gun before pushing the employee's head into a concrete block wall. *Id.* Mr. Ware fled but was apprehended and arrested within minutes. *Id.* at ¶ 8.

The sentencing court[2] calculated the guideline range as 382 to 447 months, which included the mandatory minimum 10-year consecutive sentence required for Count Two. The guideline range was based, in part, on a finding that the firearm was possessed in connection with attempted first-degree murder. Doc. 37 at 3; Doc. 73 at ¶¶ 15, 58. Mr.

---

[1] The court adopted the presentence report without change. Doc. 73 at 26.

[2] The sentencing judge has retired, and the case has been reassigned to the undersigned.

Ware's attorney asked the court to impose a sentence at the bottom of the guidelines in light of Mr. Ware's age and physical condition. Doc. 37 at 4. After considering the guidelines on an advisory basis,[3] and acknowledging the mandatory minimum consecutive sentence on the firearms offense in Count Two, *id.* at 5–6, the court sentenced Mr. Ware to a middle-of-the-guidelines sentence of 406 months: 240 months for interference with commerce by robbery, 180 months for possession of a firearm by a felon, to run concurrently to the robbery sentence, followed by a consecutive sentence of 166 months for carrying and using a firearm during and in relation to a crime of violence. Doc. 31; Doc. 37 at 6–7.

Mr. Ware has been in custody since December 3, 2004, Doc. 73 at 1, and is now 56 years old. *Id.* at 2. He suffers from HIV, Type 2 diabetes mellitus, and obesity. Doc. 82-5 at 51–52. According to current CDC guidance, persons with Type 2 diabetes and obesity are at increased risk of severe illness if they contract COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 30, 2021). Persons with immunocompromised state from HIV might be at an increased risk for severe illness if they contract COVID-19. *Id.* Based on limited data, the CDC believes people with HIV who are on effective HIV treatment have the same risk for serious illness from COVID-19 as people who do not have HIV. *See What to Know About HIV*

---

[3] Mr. Ware was sentenced in September 2005, several months after the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory.

*and Covid-19*, CDC, https://www.cdc.gov/hiv/basics/covid-19.html (last visited Mar. 30, 2021). The risk of serious illness is greatest in HIV-positive people with a low CD4 cell count and for those not on effective HIV treatment. *Id.* As recent as October 2020, Mr. Ware's medical records show that he has a high CD4 cell count, he is currently on HIV medication, and he reports no major complaints. Doc. 82-5 at 3, 5. It does not appear that any of Mr. Ware's conditions interfere with his daily life or cause him problems with self-care, and the available records show that, at least on a lay review, he is receiving appropriate treatment. *See* Docs. 81, 82.

Mr. Ware is currently housed at USP Beaumont, Doc. 83 at 1, which reports that 53 inmates are presently positive for COVID-19 and that 173 inmates and 31 staff members have recovered. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 30, 2021). USP Beaumont is one of three facilities, each of which houses approximately 1,300 inmates, at the Beaumont federal correctional complex. *See* FED. BUREAU OF PRISONS, https://www.bop.gov/locations (last visited Mar. 30, 2021). Currently, the BoP reports that 1261 inmates and 295 staff members at the Beaumont federal correctional complex have been vaccinated. *See COVID-19 Vaccine Implementation*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 30, 2021). It is not clear how many of the 1261 vaccinated inmates are housed at USP Beaumont.

While incarcerated, Mr. Ware has had eight disciplinary infractions for violating various prison rules, including being insolent to a staff member in 2007, fighting with another person in 2014, and using marijuana in 2015. Doc. 84. His most recent

infraction was in 2016 for possessing an unauthorized item.  *Id.* at 2.  He has paid the special assessment fee, earned his GED, and completed non-residential drug education classes, two hours of AIDS awareness and prevention, 16 hours of commercial driver's license training, and various work assignments.  *Id.* at 1–2.  His projected release date is December 8, 2033.  *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 30, 2021).

If released, Mr. Ware plans to return to his mother's home in High Point, North Carolina to live with his mother and half-brother.  Doc. 84 at 2.  Mr. Ware reported no earnings between 1995 through 2004, Doc. 73 at ¶ 55, and he has not specified how he plans to support himself once released.  But his mother is willing to assist and be a positive resource during Mr. Ware's transition home.  Doc. 84 at 2.  The probation office reports that the proposed release plan is suitable.  *Id.*

## Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences.  *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010).  A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so.  *See* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.  In order for a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).  It also requires that extraordinary and compelling reasons warrant such a reduction, that the reduction is

5

consistent with applicable policy statements issued by the Sentencing Commission[4], and that the § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).

In August 2020, Mr. Ware filed a motion asking the Court to appoint counsel to assist him with filing a motion for compassionate release. Doc. 76. In that filing, Mr. Ware asserted that he submitted a request for a reduction in sentence on July 15, 2020. *Id.* at 2. In its brief, the government asserts that USP Beaumont has no record of Mr. Ware's request and therefore, that he has not established that he has exhausted his administrative remedies. Doc. 88 at 3. Mr. Ware has submitted a copy of his request, which includes a notation from his drug treatment specialist counselor, Patrick Powerdrill, in which Mr. Powerdrill confirms that he submitted the request to "unit manager Tenner" on July 24, 2020. Doc. 94-1 at 1. Because USP Beaumont was on lockdown in July 2020, Mr. Ware reports that the only way he could submit the request was to have it hand-delivered. *Id*. The Court finds that Mr. Ware has satisfied the exhaustion requirement.

Mr. Ware asserts that his health conditions make him more susceptible to COVID-19 and its complications. Doc. 83 at 1. The mere existence of the pandemic is not, by itself, an extraordinary and compelling reason for a sentence reduction, *United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020), but there is a consensus in the district courts

---

[4] The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. The Court has considered the old policy statement applicable to motions brought by BoP as helpful but non-binding guidance. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020).

6

that a serious risk of contracting COVID-19 combined with medical conditions placing an inmate a high risk of severe complications from COVID-19 can constitute extraordinary and compelling reasons for a sentence reduction.[5] When consistent with the § 3553(a) factors, a sentence reduction in these circumstances may be appropriate.

Here, the government has all but conceded that Mr. Ware's health conditions constitute extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). Doc. 88 at 3. Given Mr. Ware's multiple risk factors that place him at risk of serious complications and illness and the ongoing circulation of COVID-19 at USP Beaumont, there are extraordinary and compelling reasons for a sentence reduction.

But the § 3553(a) factors do not support release. The Court's assessment is appropriately informed by the original judge's reasoned and discretionary sentence. *See United States v. Stuart*, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020).[6] Here, the sentencing judge, who had greater familiarity with the case and Mr. Ware, *Gall v. United States*, 552 U.S. 38, 51 (2007), decided that Mr. Ware's actions

---

[5] *See United States v. Williams*, No. 1:13-CR-370-4, 2020 WL 5097490, at *3 n.4. (M.D.N.C. Aug. 28, 2020) (collecting cases).

[6] There is no published appellate case law discussing what, if any, deference or consideration should be given to the original sentencing decision. There is also no guidance from the Sentencing Commission. But it is clear that courts "should be wary of using the motion to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); *accord United States v. Ballenger*, No. CR16-5535RBL, 2020 WL 3488157, at *5 (W.D. Wa. June 26, 2020). Other circuits have acknowledged the need for a good record and explanation when a judge who was not the sentencing judge decides a compassionate release motion. *See*, *e.g.*, *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020).

warranted significant punishment.  Mr. Ware has served less than half of his 406-month sentence.

Moreover, a sentence reduction here would not promote respect for the law nor protect the public.  Mr. Ware is a career criminal who has robbed multiple businesses at gunpoint.  His actions during each of the robberies were violent and aggressive; in some, he threatened to harm employees with weapons if they called for help and took their personal items.  Doc. 73 at ¶¶ 4–5; 25–30.  Multiple prison terms for the previous robberies did not deter his criminal conduct, as he committed the underlying offense less than one year after being released from prison.  *Id.* at ¶¶ 4, 33.

Balancing the sentencing factors against the uncertain nature of the risks Mr. Ware faces from COVID-19, the Court concludes that a sentence reduction is not appropriate.  His motion will be denied.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 83, is **DENIED**.

This the 31st day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE